UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT DAYTON

| | | |
|---|---|---|
| **CT POLYMERS, LLC**<br>12340 Elm Rd.<br>Bourbon, IN 46504<br><br>Plaintiff,<br><br>v.<br><br>**MARK ZELNICK**<br>2150 Monroe Concord Rd.<br>Troy, OH 45373<br><br>and<br><br>**JANET ZELNICK**<br>2150 Monroe Concord Rd.<br>Troy, OH 45373<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE<br><br><br><br><br><br><br><br>**COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff CT Polymers, LLC ("CT Polymers"), for its Complaint against Defendants Mark Zelnick ("Mark") and Janet Zelnick ("Janet") (referred collectively as the "Zelnicks"), alleges and states as follows:

**INTRODUCTION**

1. This is a civil action by CT Polymers against the Zelnicks, all of which stems from the sale of Polymers by Design, LLC ("Polymers by Design") by the Zelnicks to CT Polymers.

2. Although the Zelnicks sold Polymers by Design to CT Polymers in July of 2023, whereby the Zelnicks assigned, transferred, and warranted to CT Polymers all of their ownership interest in Polymers by Design, the Zelnicks, almost immediately after the sale, continued

conducting business in the name of Polymers by Design unbeknownst to CT Polymers and to their own personal gain.

3. Not only did the Zelnicks breach the contract that they entered into with CT Polymers, but in less than a year, the Zelnicks engaged in a civil conspiracy of theft and fraud that far exceeds the jurisdictional limits of this Court.

## PARTIES, JURISDICTION, AND VENUE

4. CT Polymers is a full-service plastic compounding company. It is an Indiana limited liability company with a principal place of business located at 12340 Elm Road, Bourbon, Indiana 46504, and operates two plants located in Indiana and Arkansas.

5. Mark is an individual who was last known to reside at 2150 Monroe Concord Road, Troy, Ohio 45373. Mark was a founding member and owner of Polymers by Design, an Ohio limited liability company, before selling his interest to CT Polymers.

6. Janet is an individual who was last known to reside at 2150 Monroe Concord Road, Troy, Ohio 45373. Janet was a founding member and owner of Polymers by Design, an Ohio limited liability company, before selling her interest to CT Polymers.

7. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because CT Polymers and the Defendants are citizens of separate states and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

8. Pursuant to 28 U.S.C. § 1391(b), venue in this action is proper in the U.S. District Court for the Southern District of Ohio because all Defendants reside in Miami County, Ohio, which is a part of this judicial district.

**FACTUAL BACKGROUND**

9. In early 2023, the Zelnicks reached out to CT Polymers about buying their business, Polymers by Design.

10. Polymers by Design was incorporated by the Zelnicks in 2010 as a brokerage company that specialized in the buying and selling of polymers.

11. By July 10, 2023, CT Polymers and the Zelnicks entered into a Membership Purchase Agreement (**Exhibit A**) and the Zelnicks also executed an Assignment of Member Interest (**Exhibit B**), which assigned, transferred, and warranted to CT Polymers all of their ownership interest in Polymers by Design.

12. The purchase price agreed between CT Polymers and the Zelnicks for Polymers by Design was for $300,000, which required CT Polymers to pay the Zelnicks an initial down payment of $75,000, and the remaining balance was to be paid out over the next twenty-four (24) months, in monthly installments of $9,375.

13. On July 14, 2023, CT Polymers issued its initial down payment of $75,000 for Polymers by Design to the Zelnicks.

14. The Membership Purchase Agreement specifically captures the Zelnicks desire to sell their membership shares and business to CT Polymers, and CT Polymers desire to purchase the membership shares and business of Polymers by Design from the Zelnicks.

15. The Membership Purchase Agreement also contained a commission arrangement that CT Polymers would pay the Zelnicks commission for all new business brought to CT Polymers or Polymers by Design after the sale, which is captured as Addendum A, and required that the Zelnicks provide detailed sales information to CT Polymers on a monthly basis.

16. New business was specifically defined within the commission arrangement as any new opportunities brought to CT Polymers or Polymers by Design by the Zelnicks, whereby commission would be calculated by multiplying 30% times the profit from each sale from new business. The commission arrangement covered a period of three years, which could be extended by mutual agreement between CT Polymers and the Zelnicks.

17. The assets that the Membership Purchase Agreement stipulated, which CT Polymers purchased from the Zelnicks for Polymers by Design, included all goodwill, customer accounts, and all membership certificates, including Polymers by Design's Employer Identification Number ("EIN").

18. Finally, the Membership Purchase Agreement also stipulated to a three year non-competition agreement between the parties, whereby the Zelnicks, either individually or in connection with any other entity, will not own any interest in a plastics recycling business or plastic resin resale business that operates within North America, but could continue to work for CT Polymers on behalf of Polymers by Design. The Zelnicks agreed to continue to work for CT Polymers on behalf of Polymers by Design.

19. Upon execution of the Membership Purchase Agreement, CT Polymers and the Zelnicks also entered into an Assignment of Member Interest, where the Zelnicks assigned, transferred, and warranted to CT Polymers all of their ownership interest in Polymers by Design.

20. The Assignment of Member Interest was a whole assignment of Polymers by Design, by the Zelnicks to CT Polymers, which entitled CT Polymers to receive, to the extent assigned, the distributions of cash and other property, and the allocations of profits, losses, income, gains, deductions, credits, or similar items to which the Zelnicks would have been entitled.

21. CT Polymers obtained full interest in Polymers by Designs on July 14, 2024, after the Zelnicks received deposit of the initial down payment of $75,000 and the Membership Purchase Agreement was signed.

22. However, unbeknownst to CT Polymers was the Zelnicks intention to not honor the Membership Purchase Agreement and Assignment of Member Interest it voluntarily entered into with CT Polymers, and to continue to conduct business in the name of Polymers by Design, to their own financial gain, without proper allocation to CT Polymers as outlined in the Assignment of Member Interest.

23. Acting in good faith, CT Polymers made its deposit of the initial down payment of $75,000 and the subsequent monthly installments for the purchase of Polymers by Design electronically into a Chase Bank checking account that the Zelnicks expressly requested, by providing CT Polymers with the account and routing numbers.

24. The Chase Bank checking account utilized by the Zelnicks was actually opened under the name of Polymers by Design, a fact that was never disclosed to CT Polymers, even after the Zelnicks sold Polymers by Design to CT Polymers (referred herein as the "Chase account"),

25. After obtaining full ownership interest in Polymers by Design, CT Polymers opened its own Polymers by Design checking account with American Commercial Bank & Trust ("ACB&T") for purposes of operating its newly acquired business.

26. Upon being told by the Zelnicks that Polymers by Design averaged around one million in annual sales, the only thing CT Polymers saw in operating Polymers by Design were expenses and sporadic sales.

27. While the Zelnicks contractually owed a duty to CT Polymers, the Zelnicks continued to use Polymers by Design for their personal use, even after receiving compensation in

5

exchange for their full ownership interest, as captured under the Membership Purchase Agreement and Assignment of Member Interest.

28. The Zelnicks diverted sales and revenue that rightfully belonged to CT Polymers as full owner of Polymers by Design.

29. The Zelnicks were paid by companies for sale of products that belonged to CT Polymers into their Chase Bank checking account, all of which were funds that rightfully belong to CT Polymers.

30. This conduct is captured by Mark engaging in sales and acknowledging receipt of payment with customers as Polymers by Design, when CT Polymers had no knowledge of these sales or customers.

31. The Zelnicks' wrongful conduct is also captured by the fact that after CT Polymers bought Polymers by Design, the Zelnicks were invoiced and billed by companies that CT Polymers had no business dealings with after its purchase of Polymers by Design.

32. The Zelnicks even purchased product and sold it to customers as Polymers by Design, which was unknown to CT Polymers. The profits of these sales were used by the Zelnicks for their own financial gain, all at the expense of CT Polymers as full owner of Polymers by Design.

33. The Zelnicks even generated invoices and created open balance statements for customers as Polymers by Design, when CT Polymers was full owner of Polymers by Design and never sold to these businesses. These proceeds were diverted by the Zelnicks for their own individual gain.

34. The Zelnicks engaged in their civil conspiracy of theft and fraud even after CT Polymers' representatives specifically put them on notice that all payments were supposed to be

made by customers via Automated Clearing House ("ACH") to the ACB&T checking account that CT Polymers opened after it purchased Polymers by Design.

35. The Zelnicks civil conspiracy of theft and fraud is further evident when customers of Polymers by Design were making payments into the Chase account for legitimate sales that CT Polymers was aware of, and the Zelnicks then took steps to get the funds over to the ACB&T checking account that CT Polymers opened.

## COUNT I
## Breach of Contract

36. CT Polymers realleges and incorporates by reference paragraph numbers 1 through 35 of its Complaint as though fully rewritten herein.

37. CT Polymers and the Zelnicks entered into a valid contract concerning CT Polymers' purchase of Polymers by Design from the Zelnicks. (*See* **Exhibit A & B**).

38. CT Polymers has fulfilled all of its obligations, as outlined by the contractual agreement that the parties entered into as evident by its initial payment of $75,000 and its subsequent installment payments as agreed upon.

39. The Zelnicks have failed to fulfil their contractual obligations that they voluntarily entered into by continuing to individually operate as Polymers by Design after they assigned, transferred, and warranted to CT Polymers all of their ownership interest in Polymers by Design.

40. Additionally, the Zelnicks have violated the commission arrangement and non-competition agreement, as found in the controlling contractual agreements.

41. As a result, CT Polymers has suffered damages based upon the Zelnicks failure to honor their contractual obligations, as they have diverted sales and revenue that rightfully belong to CT Polymers for their own financial gain.

## COUNT II
### Unjust Enrichment

42. CT Polymers realleges and incorporates by reference paragraph numbers 1 through 41 of its Complaint as though fully rewritten herein.

43. As a result of the Zelnicks' acts and/or omissions set forth above, the Zelnicks received benefits from CT Polymers that they were not entitled to, which come in the form of diverted sales and revenue that rightfully belonged to CT Polymers.

44. As a result of the Zelnicks' acts and/or omissions set forth above, the Zelnicks were aware of the benefits they were receiving unbeknownst to CT Polymers, and have been unjustly enriched, outside of what CT Polymers and the Zelnicks contractually agreed to for the purchase of CT Polymers.

45. The benefits that the Zelnicks received were procured by a civil conspiracy of theft and fraud that CT Polymers has not been rightfully reimbursed for.

46. CT Polymers is entitled to recover damages in the value of the Zelnicks' enrichment.

47. The acts and/or omissions of the Zelnicks were deliberate, intentional, knowing, willful, reckless and/or malicious, and demonstrate malice and aggravated or egregious fraud.

48. Based upon the foregoing and due to the willful, wanton, and malicious nature of the Zelnicks' conduct, CT Polymers is entitled to an award of punitive damages, plus attorney's fees, costs, and interest against the Zelnicks, jointly and severally.

## COUNT III
### Fraud

49. CT Polymers realleges and incorporates by reference paragraph numbers 1 through 48 of its Complaint as though fully rewritten herein.

50. At all times relevant, the Zelnicks were in a position of trust as they entered into a commission arrangement with CT Polymers under the operation of Polymers by Design and agreed to work for CT Polymers on behalf of Polymers by Design. Further, the Zelnicks assigned to CT Polymers the distributions of cash and other property and the allocations of profits, losses, income, gains, deductions, credits, or similar items to which the Zelnicks would have been entitled to under the operation of Polymers by Design.

51. However, the Zelnicks had no intention of complying with their obligations and promises to CT Polymers.

52. Almost immediately after the sale of Polymers by Design, the Zelnicks continued conducting business in the name of Polymers by Design, in their individual capacity, unbeknownst to CT Polymers.

53. Although CT Polymers is still working to uncover the depth and complexity of the scheme, the Zelnicks engaging in sales and acknowledging receipt of payment with customers as Polymers by Design, when CT Polymers had no knowledge of these sales or customers, purchased and sold product that did not belong to them and drafted invoices that they never disclosed to CT Polymers, under the disguise of Polymers by Design for their own individual gain.

54. The conduct the Zelnicks engaged in with other businesses as Polymers by Design, after they assigned all their interest to CT Polymers, was made falsely and with the intent to mislead other businesses they were dealing with and to mislead CT Polymers, in order to deprive CT Polymers from sales and revenue that it was rightfully entitled to.

55. Further, CT Polymers acted in good faith in reliance upon its relationship with the Zelnicks. CT Polymers relied upon false misrepresentations made by the Zelnicks, which concealed the sales and revenue that the Zelnicks were wrongfully diverting from CT Polymers.

56. As a direct and proximate result, CT Polymers has incurred damages in reliance to its business dealings with the Zelnicks.

57. The acts and/or omissions of the Zelnicks were deliberate, intentional, knowing, willful, reckless and/or malicious, and demonstrate malice and aggravated or egregious fraud.

58. Based upon the foregoing and due to the willful, wanton, and malicious nature of the Zelnicks' conduct, CT Polymers is entitled to an award of punitive damages, plus attorney's fees, costs, and interest against the Zelnicks, jointly and severally.

## COUNT IV
## Civil Theft

59. CT Polymers realleges and incorporates by reference paragraph numbers 1 through 58 of its Complaint as though fully rewritten herein.

60. Ohio Revised Code ("O.R.C.") Sections 2307.60 and 2307.61 permit anyone injured in person or property by a criminal act to pursue a civil cause of action to recover damages from any person who commits or attempts to commit or aids and abets or is otherwise complicit in committing a "theft offense" as defined in O.R.C. Section 2913.01.

61. As outlined above, the Zelnicks acted with purpose to deprive CT Polymers of its property, both in the form of products and/or revenue, and knowingly obtained or exerted control over CT Polymers' property, without CT Polymers' consent and by deception.

62. The Zelnicks actions, as alleged above, violate various criminal sections of the O.R.C., including but not limited to:

    a. Theft (O.R.C. 2913.02);

    b. Telecommunications Fraud (O.R.C. 2913.05);

    c. Tampering with Records (O.R.C. 2913.42);

    d. Conspiracy (O.R.C. 2923.01); and

    e.  Attempt to Commit an Offense (O.R.C. 2923.02).

63. CT Polymers has been injured in person or property by such criminal acts and has been damaged in a principal amount no less than the jurisdictional limits of this Court.

64. By virtue of the Zelnicks' commission of, or complicity in, committing numerous "theft offenses," CT Polymers is entitled to an award of liquidated damages in an amount three times the value of the property at the time it was subjected to the theft offense, and to recovery as otherwise permitted under O.R.C. Sections 2307.60 and 2307.61.

65. The acts and/or omissions of the Zelnicks were deliberate, intentional, knowing, willful, reckless and/or malicious, and demonstrate malice and aggravated or egregious fraud.

66. Based upon the foregoing, and due to the willful, wanton, and malicious nature of the Zelnicks' conduct, CT Polymers is entitled to an award of punitive damages, plus attorney's fees, costs, and interest against the Zelnicks, jointly and severally.

## COUNT V
### Civil Conspiracy

67. CT Polymers realleges and incorporates by reference paragraph numbers 1 through 66 of its Complaint as though fully rewritten herein.

68. Mark and Janet have engaged in a malicious conduct to injure CT Polymers and have engaged in an unlawful act independent of the conspiracy, resulting in actual damages to CT Polymers.

69. The Zelnicks have committed intentional wrongs independent of the conspiracy, to include theft and fraud, for the purpose of diverting sales and revenue that rightfully belonged to CT Polymers, as the full owner of Polymers by Design.

70. As a result of their participation in the civil conspiracy, Mark and Janet are jointly and severally liable for CT Polymers' damages.

71. The acts and/or omissions of the Zelnicks were deliberate, intentional, knowing, willful, reckless and/or malicious, and demonstrate malice and aggravated or egregious fraud.

72. Based upon the foregoing and due to the willful, wanton, and malicious nature of the Zelnicks' conduct, CT Polymers is entitled to an award of punitive damages, plus attorney's fees, costs, and interest against the Zelnicks, jointly and severally.

**WHEREFORE**, CT Polymers prays for and demands judgement as follows:

A. Non-economic compensatory damages in an amount to be determined at trial; and

B. Liquidated, treble, punitive, or other exemplary damages in amount to be determined at trial; and

C. Reasonable attorney's fees incurred in pursuing the claims against Defendants, including pre-litigation and post-litigation fees; and

D. All costs and expenses incurred in pursing, enforcing, and collecting damages as to the claims against the Defendants; and

E. Pre- and Post-judgment interest; and

F. All other legal and equitable relief this Court and/or a jury determines is appropriate.

Respectfully submitted,

*/s/ Mark G. Arnzen*
Mark G. Arnzen, Jr. (0081394)
Bradley J. Steffen (0093450)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
513-977-8189
Mark.Arnzen@Dinsmore.com
Bradley.Steffen@Dinsmore.com
*Counsel for CT Polymers, LLC*

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury for its claims asserted in this Complaint.

Respectfully submitted,

*/s/ Mark G. Arnzen*
Mark G. Arnzen, Jr. (0081394)
Bradley J. Steffen (0093450)

**PRECIPE FOR CERTIFIED MAIL SERVICE**

TO THE CLERK:

Please issue summons and serve the Amended Complaint upon Defendants, Mark Zelnick and Janet Zelnick, via certified mail service at the following address:

    Mark Zelnick
    2150 Monroe Concord Rd.
    Troy, OH 45373

    Janet Zelnick
    2150 Monroe Concord Rd.
    Troy, OH 45373

    Respectfully submitted,

    */s/ Mark G. Arnzen*
    Mark G. Arnzen, Jr. (0081394)
    Bradley J. Steffen (0093450)